# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-3163

UNITED STATES OF AMERICA

v.

DUANE TAYLOR,
Appellant

---

On Appeal from the U.S. District Court, E.D. Pa.
Judge John M. Gallagher, No. 5:22-cr-00326

Before: HARDIMAN, BIBAS, and RENDELL, *Circuit Judges*
Submitted: Sept. 17, 2026; Filed: Sept. 21, 2026

---

OPINION OF THE COURT

BIBAS, *Circuit Judge*. Sometimes, as here, a crime spree spans separate occasions. Duane Taylor challenges two of his sentencing enhancements: one for harming a vulnerable victim, and another for committing a pattern (meaning at least two occasions) of child sex crimes. But the District Court reasonably found that he knew or should have known that the victim was vulnerable. And it reasonably treated the hours-long spree of child rapes, across at least three locations, as adding up to a pattern, not just one occasion. Because the court did not clearly err in applying either enhancement, we will AFFIRM.

## I. TAYLOR KIDNAPS J.H., RAPES HER FOUR TIMES, AND FILMS ONE OF THE RAPES

For more than a year, Duane Taylor dated and lived with a woman and her children. But after they broke up and she moved out, Taylor snuck into her home in Pennsylvania. One night around 2 a.m., he drove up with his headlights off. Wearing gloves and a sheet, he crept inside, grabbed his ex-girlfriend's thirteen-year-old daughter, J.H., brought her out to his SUV, and forced her into the trunk. When she resisted, he told her to "shut the f*** up" and tied her hands, neck, feet, and mouth.

From there, Taylor drove J.H. up to Brooklyn, New York. Around 6 a.m., he raped her in his apartment there as she cried. Then he put something over her head, drove her to a parking lot, and raped her again inside the SUV. They slept in the SUV. After they awoke, he drove them to another parking lot, where he raped her a third and fourth time, performed oral sex on her, and forced her to perform it on him. He also filmed the SUV rapes with his cellphone. During one of them, she was screaming. After the fourth rape, he showed J.H. a gun and threatened to kill her whole family if she made any noises or tried to escape. Once Taylor left the SUV, J.H. did escape and was found near his apartment around 5:30 p.m. A bystander called 911. J.H. was brought to a hospital, where rape kits confirmed semen in and around her vagina.

Taylor was arrested and confessed. He pleaded guilty without a plea agreement to five crimes: kidnapping; traveling interstate for illicit sex; and producing, transporting, and possessing child pornography. 18 U.S.C. §§ 1201(a)(1), (g), 2423(b), 2251(a), 2252(a)(1), (4)(B), (b)(1), (2). At sentencing, he

disputed two enhancements: a two-level enhancement for a vulnerable victim and a five-level one for a pattern of child sex crimes. U.S.S.G. §§ 3A1.1(b)(1), 4B1.5(b)(1). The District Court sentenced him to life imprisonment, applying both enhancements; Taylor now appeals both. We review the court's factual findings for clear error and its application of the Guidelines to the facts for abuse of discretion. *United States v. Wise*, 134 F.4th 745, 748 (3d Cir. 2025); *United States v. Iannone*, 184 F.3d 214, 220 (3d Cir. 1999); *United States v. Perez-Colon*, 62 F.4th 805, 812 (3d Cir. 2023).

## II. THE VULNERABLE-VICTIM ENHANCEMENT APPLIED

First, Taylor objects that the District Court should not have applied the vulnerable-victim enhancement. He concedes that J.H. was in fact vulnerable because of her cognitive defects and developmental delays, but disputes that he "knew or should have known" of them. U.S.S.G. § 3A1.1(b)(1). He also disputes that J.H.'s vulnerability "facilitated" his crime. *United States v. Adeolu*, 836 F.3d 330, 333 (3d Cir. 2016) (citation omitted). Both objections fail.

Taylor had plenty of knowledge of J.H.'s vulnerabilities. He had lived with her and her family for more than a year. She routinely sucked her thumb and had her mother hold her for security. Indeed, one of Taylor's videos shows J.H. sucking her thumb during one of the rapes. And the District Court properly relied on those facts to support the enhancement.

True, Taylor had his own mental and emotional problems. But that is no defense. As the District Court found, "I don't see anything in the psychological evaluations or otherwise in the record that persuasively supports that Mr. Taylor was incapable

of knowing of the victim's vulnerability. In fact, as I noted, I think the facts … may support a contrary position." JA 248. That finding was proper. The court also found that because of her vulnerabilities, J.H. "did not realize the danger that was posed to her" and had difficulty "verbalizing requests for help." JA 247. So it reasonably found that J.H.'s vulnerability facilitated Taylor's crimes.

## III. The Enhancement for a Pattern of Child Sex Crimes Applied

Next, Taylor argues that his child sex crimes amounted to just a single occasion, not a "pattern" comprising "at least two separate occasions." U.S.S.G. § 4B1.5(b) & cmt. 4(B)(i). The government responds that the enhancement applied because he sexually abused J.H. at different times and places. No one disputes that the commentary applies here.

First off, Taylor claims that the "pattern" enhancement applies only to a pattern of convictions. Not so. The enhancement considers any "prohibited sexual conduct," whether or not that conduct "resulted in a conviction." U.S.S.G. § 4B1.5(b) & cmt. 4(B)(ii). Since Taylor confessed to multiple rapes and does not dispute that those rapes *would have* supported convictions under 18 U.S.C. § 2426(b)(1)(B), *see id.* at cmt. 4(A), the only question is whether those separate offenses make up separate "occasions." They do.

To understand what counts as one occasion, we look to precedent. The Supreme Court has interpreted that word in the Armed Career Criminal Act. Applying its ordinary meaning the Court held that "an 'occasion' means an event or episode." *Wooden v. United States*, 595 U.S. 360, 367 (2022). To

differentiate occasions, we consider how close in time and uninterrupted the crimes are; how far apart they take place; and how similar or intertwined they are. *Id.* at 369. Crimes separated by a day or more, or spread across a "significant distance," are "nearly always treated … as occurring on separate occasions." *Id.* at 370 (internal quotation marks omitted). Conversely, a string of punches during a bar fight adds up to only one occasion, even if the punches hit three different victims. *Id.* at 368. And like the punches, a string of burglaries is a single occasion if they all happen on one night, back to back, in the same building. *Id.* at 375. Though *Wooden* interpreted a different law, its reading of "occasion[s]" tracks ordinary English usage and we adopt it here too.

Without citing *Wooden*, the District Court intuited and applied this common-sense test properly. It stressed that Taylor committed separate rapes at three or more locations, "set apart from one another in time and in place." JA 249. (Indeed, they apparently happened across the better part of a day.) That analysis was reasonable, and the District Court did not abuse its discretion. So we will AFFIRM Taylor's sentence, including both sentence enhancements.

*Counsel for Appellant*
Marc S. Fisher
GROSS MCGINLEY

*Counsel for Appellee*
Rosalynda Michetti
Robert A. Zauzmer
U.S. ATTORNEY'S OFFICE